**ORDERED.**

**Dated: May 05, 2011**

_____
**EILEEN W. HOLLOWELL**
U.S. Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TRANSWEST RESORT PROPERTIES, INC.,<br>an Arizona corporation,<br><br>Debtor.<br><br>Jointly Administered with:<br><br>TRANSWEST TUCSON PROPERTY, L.L.C., a Delaware limited liability company,<br><br>TRANSWEST HILTON HEAD PROPERTY, LLC, a Delaware limited liability company,<br><br>TRANSWEST TUCSON II, LLC, a Delaware limited liability company, and<br><br>TRANSWEST HILTON HEAD II, LLC, a Delaware limited liability company.<br><br>This Pleading applies to:<br><br>☐ All Debtors<br>■ Specified Debtors | In Proceedings Under Chapter 11<br><br>Case No. 4:10-bk-37134-EWH<br><br>Jointly Administered with<br>Case Nos.:<br><br><br>4:10-bk-37160- EWH<br><br>4:10-bk-37170- EWH<br><br>4:10-bk-37151- EWH<br><br>4:10-bk-37145- EWH<br><br><br>**SUPPLEMENTAL ORDER TO SECOND INTERIM ORDER AUTHORIZING TRANSWEST TUCSON PROPERTY LLC'S AND TRANSWEST HILTON HEAD PROPERTY LLC'S USE OF CASH COLLATERAL** |

This matter came before the Court pursuant to the "Application for Issuance of Order to Show Cause Requesting an Order Against Transwest Tucson, LLC and Transwest Hilton Head, LLC for Contempt and for Additional Relief Including the Appointment of a

DMWEST #8180078 v3

1

QB\138073.00002\13086019.3

Chapter 11 Trustee" (Docket No. 207) (the "**Application for OSC**") filed by JPMCC 2007-C1 Grasslawn Lodging LLC ("**Senior Lender**"), and the "Order to Show Cause" issued by the Court (Docket No. 216) (the "**Order to Show Cause**") with respect to, among other things, a dispute over the amount of $600,000 of Cash Collateral at the La Paloma Debtor that the Senior Lender asserted should have been paid to it as additional adequate protection and the Debtors asserted need to be retained for future operations due to the seasonality the Tucson Property's business (the "**Disputed Payment**"). The Disputed Payment has been held by the La Paloma Debtor and not used pending resolution of the matter by the Court at a final evidentiary hearing set for May 13, 2011.

The Senior Lender and the Debtors have conferred and reached an agreement that (a) resolves all issues raised in the Application for OSC and Order to Show Cause, including the disposition of the Disputed Payment, (b) provides for clarification of the "Second Interim Order Authorizing Transwest Tucson Property LLC's and Transwest Hilton Head Property LLC's Use Of Cash Collateral" (Docket No. 169) (the "**Cash Collateral Order**"),[1] and (c) modifies the Cash Collateral Order to authorize the Debtors to use cash collateral under the terms of the Cash Collateral Order, subject to submission of a supplemental cash collateral budget, for an additional period.

The Court finds that the agreement set forth under the terms of this Order, having been reached by the Senior Lender and the Debtors in good faith, is consistent with the findings of fact and conclusions of law set forth in the Cash Collateral Order, which are adopted herein, and may be approved and implemented pursuant to the terms thereof.

ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Application for OSC is hereby withdrawn by the Senior Lender.

---

[1] All capitalized terms used in the Cash Collateral Order are fully incorporated herein.

2. The "Combined Emergency Motion for Interim Order Authorizing Use of Cash Collateral Pending Final Hearing and Emergency Motion for Expedited Hearing" (Docket No. 209), and related pleadings seeking an expedited hearing and expedited discovery (collectively, the "**Debtors' Emergency Motion**") are hereby withdrawn by the Debtors.

3. The evidentiary hearing scheduled on May 13, 2011, in these cases is vacated.

4. The term of the use of cash collateral set forth in Paragraph 1 of the "ORDER" section of the Cash Collateral Order (p. 11 of the Cash Collateral Order) shall be extended from May 20, 2011, to September 1, 2011 (the "**Extended Period**"), provided that the Debtors' updated Budgets for the Tucson Property and the Hilton Head Property, for the Extended Period, approved by the Senior Lender (the "**Supplemental Budgets**"), are submitted to the Court to be incorporated as a supplement to Exhibit L to the Cash Collateral Order on or before May 13, 2011. The Supplemental Budgets may be electronically filed separate from the Cash Collateral Order with a notice of filing and, upon filing, will be deemed incorporated into the Cash Collateral Order.

5. The Debtors and the Senior Lender will obtain from the Court a hearing date after August 15, 2011, as a standby hearing date for the consideration by the Court of continued use of cash collateral beyond September 1, 2011. The Debtors and the Senior Lender will report to the Court telephonically on or before August 1, 2011, whether such a hearing will be contested and, if so, submit a proposed motion and briefing schedule. If the Debtors and the Senior Lender agree to an additional Supplemental Budget that authorizes use of cash collateral after September 1, 2011, the parties may submit the additional Supplemental Budget to the Court along with an additional Supplemental Order to authorize continued use of cash collateral and the Court will consider the same at the August hearing date, which in such instance will be a non-evidentiary hearing on notice to all required parties.

6. The Cash Collateral Order is hereby modified, as follows:

    a. The Debtors may retain and maintain a cash reserve for each respective property in the amount of a minimum of $1.5 million (the "**Cash Reserve Amount**") which need not be maintained in a segregated account (the "**Working Capital**").

    b. Paragraph 9 of the Cash Collateral Order is hereby replaced with the following: As additional adequate protection for the continued use of Cash Collateral, and the other benefits provided herein for the Debtors and their estates, Senior Lender shall be entitled to adequate protection payments in accordance with Section 361(1) of the Bankruptcy Code. A monthly adequate protection payment in the amount of $200,000 (the "**Minimum Payment**") shall be made by the fifteenth (15th) day of each month for the immediately preceding month. An additional adequate protection payment may be made to the Lender on the fifteenth (15th) day of the month following the end of each calendar quarter equal to the net operating income of each Debtor for the preceding quarter ("**Net Operating Income**") determined as follows: cash revenue *less*: (i) reserves (as approved in the Budgets or agreements between the respective Debtor and Senior Lender), (ii) amounts expended pursuant to the Budget, (iii) outstanding checks, (iv) amounts, if any, necessary to fund the Working Capital so that the Cash Reserve Amount is maintained during the upcoming calendar quarter, and (v) amounts, if any, necessary to fund the Disputed Payment so that the Disputed Payment is replenished. To the extent that the Net Operating Income for a Debtor is a positive number more than $50,000.00, then the Debtor's Net Operating Income shall be paid to Senior Lender (the "**Additional Adequate Protection Payment**" and, together with the Minimum Adequate Protection Payment, the "**Adequate Protection Payments**"). To the extent that the Net Operating Income determined as set forth above is zero or a negative number, no Additional Adequate Protection Payment shall be made to Senior Lender for that quarter. Minimum Payments made by the Debtors under the terms of this Order shall be paid to the Senior Lender and

deposited into the Minimum Payment Account, so that a reserve equal to two (2) months' Minimum Payments shall at all times be maintained. The Adequate Protection Payments may be applied, (a) to fund any reserves or escrows required under the Loan Documents; (b) to pay costs, fees and expenses required to be paid under the Loan Documents; and/or (c) to reduce the amount of the Pre-Petition Loan Obligations. The Senior Lender shall not be obligated to use the Adequate Protection Payments to fund escrows for taxes or insurance, which items Debtors will include in the Budgets as an expense item for which the use of Cash Collateral is authorized. All of the Adequate Protection Payments received by Senior Lender under this Second Interim Order shall be free and clear of any costs, claims, charges, assessments or liability including, without limitation, any such costs, claims or charges arising out of or based on, directly or indirectly, Sections 506(c) or 522(b) of the Bankruptcy Code, or otherwise. Debtors reserve their right to request the Court to allocate the Adequate Protection Payments to a reduction of the Pre-Petition Loan Obligations or otherwise and the rights of the Debtors and the Senior Lender with regard to the allocation and/or the characterization of the Adequate Protection Payments is expressly preserved. Further Debtors and Senior Lender each acknowledge that the Minimum Payment is a negotiated amount that is the result of a compromise of potential litigation and is not intended to be and is not an admission or reflection by any party of the value of the Senior Lender's collateral and may not be used as evidence of such value.

      c.      The first two sentences of Paragraph 18 (which are contained on lines 1 through 14 of Paragraph 18) of the "ORDER" section of the Cash Collateral Order, are deleted and the following are substituted therefor: "Notwithstanding any other provision contained in this Second Interim Order, the Debtors' right to use Cash Collateral under the terms of this Second Interim Cash Collateral Order only shall immediately terminate upon the occurrence of any of the following conditions: (a) entry of an order by the Bankruptcy Court converting or dismissing either of the Debtors' Cases; (b) entry of an order by the Bankruptcy Court appointing a chapter 11 trustee or chapter 7 trustee in the Debtors'

Cases; (c) the reversal, vacatur, stay, amendment, supplementation or other modification of this Second Interim Order without the consent of Senior Lender; (d) any person or entity obtains an order permitting the use of Cash Collateral without Senior Lender's express written consent; or (e) failure of either Debtor to remit the Minimum Payment portion of the Adequate Protection Payments as set forth in Paragraph 9 of this Order. In addition, the following conditions shall be an event of default under this Order (an "**Event of Default**") which shall, upon entry of an order by the Bankruptcy Court, after notice and a hearing, that such event has occurred, terminate the Debtors' authorization to use Cash Collateral under the terms hereof: (f) non-compliance by the Debtors with any of the express terms or provisions of this Second Interim Order, including the provision by the Debtors of any false, inaccurate or incomplete representations, warranties, certifications, reports or summaries required to be provided herein; (g) the failure of either Debtor to remit the amount of the Adequate Protection Payments pursuant to Paragraph 9 of this Order; or (h) the occurrence of a material adverse event that materially impairs the value of Senior Lender's collateral. Upon the occurrence of an Event of Default, the Senior Lender shall provide written notice of the occurrence of an Event of Default to the Debtors and their counsel and shall have the right to file a Motion on an expedited basis and obtain a hearing, with notice to the Debtors, within three (3) business days seeking a determination from the Bankruptcy Court that an Event of Default has occurred. Upon such entry of an order determining that an Event of Default has occurred by the Bankruptcy Court, the Debtors' authorization for the use of Cash Collateral under this Order shall be terminated. Pending a final determination of the occurrence of an Event of Default, use of Cash Collateral will continue to be authorized under the terms of this Order, but Senior Lender may seek additional restrictions and protections from the Bankruptcy Court pending a final determination, upon notice to the Debtors."

7. Except as expressly modified by this Supplemental Order, the terms of the Cash Collateral Order shall remain unaltered and in full force and effect.

8. The Tucson Debtors shall retain the Disputed Payment as part of the Working Capital for the Tucson Property pending further Order of this Court or agreement of the Parties. The Tucson Debtor must account for the Disputed Payment at all times. To the extent that the Working Capital for a particular month is less than the Cash Reserve Amount, the Tucson Debtor may draw upon the Disputed Payment so that at all times, the Working Capital with respect to the Tucson Debtor, does not fall below the Cash Reserve Amount. Subject to paragraph 6 above, in any month in which the Cash Reserve exceeds the Cash Reserve Amount and if any part of the Disputed Payment has been used as part of the Cash Reserve, the Disputed Payment shall be repaid. The Senior Lender reserves the right to request that the Court determine that the Disputed Payment must be paid by the Debtors to the Senior Lender under the terms of the Cash Collateral Order by filing a Motion on regular notice in accordance with the Court's procedures at a subsequent time, and the Debtors reserve the right to contest the request for such relief and similarly reserve the right to seek authority of the Court to use the Disputed Payment for operating purposes.

**DATED AND SIGNED ABOVE**

AGREED TO BY:

| | |
|---|---|
| QUARLES & BRADY LLP<br>One South Church Avenue<br>Suite 1700<br>Tucson, Arizona 85701-1621 | BALLARD SPAHR LLP<br>1 E. Washington Street, Suite 2300<br>Phoenix, Arizona 85004 |
| By  */s/ Kasey C. Nye*<br>    Kasey C. Nye<br>    Susan G. Boswell<br>    Elizabeth S. Fella<br><br>Attorneys for Debtors | By  */s/ Dean C. Waldt*<br>    Ethan B. Minkin<br>    Jaclyn D. Foutz<br>    Dean C. Waldt<br>    Jon Theodore Pearson<br><br>Attorneys for Senior Lender |

DMWEST #8180078 v3

QB\138073.00002\13086019.3